UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY GRONSKI #294193,

    *Plaintiff*,

v.

KELLY M. SIGLER,[1]

    *Defendants*.

_____/

CASE NO. 2:13-CV-13928

DISTRICT JUDGE BERNARD FRIEDMAN
MAGISTRATE JUDGE PATRICIA MORRIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANT SIGLER'S MOTION FOR SUMMARY JUDGMENT
and PLAINTIFF'S MOTION TO DEFER MOTION FOR SUMMARY JUDGMENT**
(Docs. 25, 29)

## I.   RECOMMENDATION

For the reasons presented below, **IT IS RECOMMENDED** that Defendant Sigler's Motion for Summary Judgment (Doc. 25) be **GRANTED** and that Plaintiff's Motion to Defer Motion for Summary Judgment (Doc. 29) be **DENIED**.

## II.   REPORT

### A.   Introduction

Plaintiff Jeffrey Gronski filed this *pro se* prisoner civil rights action under 42 U.S.C. § 1983 on September 13, 2013. (Doc. 1 at 1.) Plaintiff alleges that Defendants David Clifton and Mary Ann Bull-Ehinger were deliberately indifferent to his safety needs in violation of the Eighth Amendment by failing to prevent sexual assault/harassment from his psychologist Joell Morrill.[2] (Doc. 1 at 3-5.) During the times relevant to this cause of action, Defendant Sigler

---

[1] Defendants Bull-Ehlinger and Clifton were terminated from the case on July 31, 2014.

[2] Joell Morrill is not named in this case because Plaintiff has reached a settlement with her separately. Stipulated Order of Dismissal at 1, *Gronski v. Morrill*, No. 5:12-cv-15191 (E.D. Mich. Oct. 4, 2013).

was employed by "Marriages That Work" ("MTW"), which was a 501(c)(3) charitable organization but which has since, due to lack of funding, been dissolved. (Doc. 25 at 5.)

Defendant contends that she is entitled to summary judgment because: (1) she was not acting under color of state law since she is a private citizen and was not employed by or an agent of the State of Michigan (Doc. 25 at 8-9); (2) Plaintiff's claims are barred by the two-year statute of limitations set forth in Mich. Comp. Laws § 600.5805(2) (assault and battery) (Doc. 25 at 9-10); and (3) Plaintiff failed to exhaust his administrative remedies. (Doc. 25 at 10-12.) Plaintiff responded, in his motion to defer summary judgment (Doc. 29), and Defendant Sigler replied. (Doc. 30.)

Plaintiff seeks to defer summary judgment (Doc. 29) because he "needs to obtain discovery and obtain the contractual agreement between Defendant Sigler's employer (MTW) and the Michigan Department of Corrections (MDOC)." (Doc. 29 at 3.) Plaintiff's other arguments address the merits of Defendant Sigler's motion for summary judgment.

Therefore, the motions are ready for report and recommendation without oral argument. *See* E.D. Mich. LR 7.1(f)(1).

### B. Standard of Review

A motion for summary judgment will be granted under Rule 56 of the Federal Rules of Civil Procedure when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has "'the initial burden of showing the absence of a genuine issue of material fact' as to an essential

element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

    **C.**    **Defendant Sigler's Motion for Summary Judgment**

**1. State Actor Requirement**

To state a claim under 42 U.S.C. § 1983, a Plaintiff must show: (1) deprivation of a right that is protected by the Constitution or law of the United States; that was (2) caused by a person acting under the color of state law. *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006). In the instant case, Defendant Sigler was a private party employed by MTW, a 501(c)(3) charitable organization. "A private party's actions constitute state action under section 1983 where those actions may be 'fairly attributable' to the state.'" *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003). The Sixth Circuit uses three tests to determine whether an action may be considered "fairly attributable to the state": (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test. *Id.*

In the instant case, Defendant Sigler conducted workshops at the JCS prison that were aimed at teaching prisoners how to develop healthy relationships. MTW provided the course materials and paid Defendant Sigler, while JCS/MDOC provided the room in which to conduct the workshop. (Doc. 25, Ex. A, ID 211-212.) MTW did not have a contract with the MDOC. Inmates were allowed to but not required to attend the workshops. Defendant Sigler was not a therapist and if the inmates asked for her advice during the workshops, she would inform them that she could not help, and then would direct them to a prison therapist or psychologist. *(Id.)* Defendant Sigler remembers Plaintiff speaking to her after a workshop in 2009 and she recalls Plaintiff telling her that he was having feelings for Joell Morrill, the prison psychologist. Defendant Sigler reported this conversation to Plaintiff's therapist and to Joell Morrill. *(Id.)* Plaintiff's only allegations against Defendant Sigler are that she "reported to Joell Morrill

4

Plaintiff Gronski's complaints" and that she "did not report the information to management personnel." (Doc. 1 at 3.)

Under the public function test, a private party could be considered a state actor if the private party "exercised powers traditionally reserved to the state." *Chapman*, 319 F.3d at 833. Under this test, the power must be more than a grant of some function that is traditionally associated with sovereignty. *Jackson v. Mertropolitan Edison Co.*, 419 U.S. 345, 352 (1974). Here, Michigan prisons have psychologists and therapists on staff but it is unrebutted that Defendant Sigler's role was to conduct workshops for MTW inside the prison, not to be a therapist for prisoners. Therefore, even if providing therapy to prisoners is a power traditionally reserved to the state, Defendant Sigler did not perform that function. I therefore suggest that Defendant Sigler is not a state actor under the public function test.

Under the state compulsion test, a private party becomes a state actor where the state exercised overt or covert coercive power or significant encouragement to the extent that "in law the choice of the private actor is deemed to be that of the state." *Wolosky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). Here, there is no evidence that the MDOC or state exercised any power at all over MTW or Defendant Sigler's role in conducting the workshops, let alone any allegation that such power was coercive. I therefore suggest that Defendant Sigler is not a state actor under the state compulsion test. *Brown v. Hatch*, 984 F. Supp. 2d 700, 708 (E.D. Mich. 2013) (holding that a foster parent, who had discretion over day-to-day parenting decisions, was not a state actor under the state compulsion test or any other test).

Under the symbiotic relationship or nexus test, a private party can be considered a state actor if there is a "sufficiently close nexus between the government and the private party's

5

conduct so that the conduct may be fairly attributable to the state itself." *Chapman*, 319 F.3d at 834. Here, there is no allegation or evidence that MTW, let alone that Defendant Sigler has such symbiosis with the State of Michigan. I therefore suggest that Sigler is not a state actor under this test either. *See Wolosky,* 960 F.2d at 1335 (6th Cir. 1992) (holding that the fact that a non-profit receives a significant portion of its funding from the government does not convert it into a state actor under the symbiotic or nexus test); *Falkiewicz v. Mich. Dep't of Corr., et al*, No. 12-14404, 2013 WL 3981568, at *2 (E.D. Mich. July 31, 2013) (holding that American Correctional Association, non-profit organization responsible for inspection of MDOC facilities, was not a state actor).

Accordingly, Defendant Sigler's motion for summary judgment should be granted because the state action requirement of § 1983 claims has not been met.

### 2. Statute of Limitations

Defendant Sigler argues that Plaintiff's claims are barred by the two-year statute of limitations set forth in Mich. Comp. Laws § 600.5805(2) (assault and battery).(Doc. 25 at 9-10.) Defendant notes that the last sexual assault alleged by Plaintiff occurred on September 14, 2011 (Doc. 25 at 10), and Plaintiff filed the instant complaint on September 13, 2013; however, Defendant Sigler last worked at JCS in April of 2010, so the September 2013 filing against her is untimely. (*Id.*)

First of all, the statute of limitations for all § 1983 claims filed in Michigan is three years even if the Michigan statute of limitations for the particular tort claim, such as assault and battery, would be shorter. This is so because "[t]he Supreme Court held...that the statue of limitations for § 1983 actions is the same as the limitations period for personal injury claims

6

under state law," *Wilson v. Garcia*, 471 U.S. 261, 276 (1985), and "[u]nder Michigan law, the limitations period [for personal injury claims] is three years." *JiQiang Xu v. Michigan State Univ.*, 195 F. App'x 452, 455 (6th Cir. 2006); *see also* Mich. Comp. Laws. § 600.5805(10).

Secondly, Plaintiff filed the lawsuit within three years (and even two years) of the last alleged sexual assault so the filing of the case itself was timely. *See*, *Gould Electronics, Inc. v. Livingston Co. Road Comm'n*, No.09-cv-12633, 2012 WL 5817939, at *11 (E.D. Mich. May 25, 2012) (noting the rule in Michigan that where defendant's wrongful acts are of a continuing nature, the period of limitation will not run until the wrong is abated; but, in dicta, doubting this rule's continuing vitality). The timeliness is not undone by the fact that Defendant Sigler's individual actions that were a part of the ongoing alleged wrongful acts ended more than three years before the action was filed since the limitation period applies to the properly joined claims in the complaint as a whole rather than as applied against each individual defendant.

I therefore suggest that the statute of limitations does not provide a ground for granting the motion for summary judgment.

### 3. Exhaustion of Remedies Law, Background and Analysis

Defendant Sigler also contends that Plaintiff failed to exhaust his administrative remedies. (Doc. 25 at 10-12.)

#### a. Exhaustion of Remedies: Governing Law and Policies

Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") "in response to a sharp rise in prisoner litigation in federal courts." *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). By passing the PLRA, Congress attempted to ensure that "the flood of nonmeritorious [prisoner civil rights] cases [did] not submerge and effectively preclude consideration of the allegations

7

with merit." *Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress equipped the PLRA with several mechanisms designed to reduce the quantity and increase the quality of the claims that came to federal court. *Id.* A "centerpiece" of the PLRA was the "invigorated" exhaustion requirement: "No action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000); *see also Woodford*, 548 U.S. at 84 ("A centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an 'invigorated' exhaustion provision.") (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Courts consider the PLRA's suits 'brought with respect to prison conditions' to include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

The *Woodford* Court held that the PLRA's exhaustion of administrative remedies requires (1) that no remedies currently remain available, and (2) that the remedies that had been available to the prisoner were "properly" exhausted. 548 U.S. at 93. Prior to *Woodford* there were conflicting interpretations of the PLRA's exhaustion requirement. Some circuits interpreted the exhaustion requirement to mean that plaintiffs must have no more administrative remedies available before bringing their cases to federal court. *Id.* Others interpreted it to mean that plaintiffs must have "properly" exhausted their available remedies by following the agency's procedural requirements such as "deadlines and other critical procedural rules." *Id.*

8

In finding that exhaustion of remedies required "proper" exhaustion, the Court was persuaded by the "striking[]" similarities between the language of the PLRA and the doctrine of exhaustion in administrative law. *Id.* at 102. It also considered the purposes behind the exhaustion requirement, reasoning that an interpretation that did not require proper exhaustion would render the PLRA "toothless"–enabling a prisoner to bypass prison remedies by simply disregarding or ignoring deadlines. *Id.* at 95. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id*. at 90. Complaints and appeals must be filed "in the place, and at the time the prison's administrative rules require." *Id.* at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

In *Jones*, the Court instructs us to look to the prison's policy itself when determining "whether a prisoner has properly exhausted administrative remedies–specifically, the level of detail required in a grievance to put the prison and individual on notice of the claim." 549 U.S. at 205, 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the *prison's requirements*, and not the PLRA, that define the boundaries of proper exhaustion." (emphasis added)). Specifically, the *Jones* Court was determining whether a plaintiff needed to identify the defendant by name during the initial grievance process. Since the MDOC's policy at the time did not require that level of specificity the Court did not find that the PLRA required it. *Id.*[3]

---

[3] The MDOC has subsequently changed its policy, requiring that in order to properly exhaust remedies plaintiffs need to identify all defendants in the initial grievance that they later name in the subsequent federal complaint. *See infra.*

9

A plaintiff does not need to show proper exhaustion as a part of their complaint. *Jones*, 549 U.S. at 216. Rather, failure to properly exhaust remedies is now an affirmative defense. *Id.* The *Jones* Court struck down the Sixth Circuit's procedural rule placing the burden on prisoners to plead and prove exhaustion in their complaint. *Id.* at 921.

### b. Application and Analysis

#### i. The Michigan Department of Corrections Grievance Policy

The MDOC provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007). The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, the grievant must attempt to resolve the issue with the person involved "within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control..." MDOC PD 03.02.130(P).

If the initial attempt to resolve the issue with the person involved is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(v). If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the

Prisoner Affairs Section. MDOC PD 03.02.130(FF). The Step III response concludes the administrative grievance process.

Any allegations of prohibited sexual conduct involving prisoners falls under the jurisdiction of the Internal Affairs Division. MDOC PD 03.03.140 (requiring the Internal Affairs Division to investigate allegations of prohibited conduct). To properly exhaust remedies, this policy explicitly requires that inmates file grievances through the above 03.02.130 grievance policy *in addition to* Internal Affairs investigations. *Id.*

### ii. Grievances Filed by Plaintiff and the Internal Affairs Investigation

I will consider all six of Plaintiff's grievances filed from May 2009 to January 2014 that proceeded to Step III.(Doc. 11-5 at 2-3.) Grievance JCS-11-11-2011-19c was about a typewriter that was not returned to Plaintiff after his transfer to the Cooper Street Corrections Facility. (*Id.* at 36.) In the section of the Step I grievance form that asks "[w]hat attempt did you make to resolve this issue prior to writing this grievance?" Plaintiff wrote the following: "[o]n the above date [9-27-11] I informed Deputy Warden Riley that I did NOT have my Typewriter in the stack of [] property that was s[i]tting there for my transfer, and that it was in violation of P.D. 04.07.112v." (*Id.* at 35.) Under the section "[s]tate problem clearly," Plaintiff began by citing several policies. (*Id.*) Then he wrote "Body of the Grievance" in a heading and followed it with "[a]ll of the above being listed as reference; on 9-27-2011, Julie Bridgewater did willfully violate P.D. 04.04.112v, by not transferring my typewriter with me to the next facility." (*Id.* at 38.) He then claims that the destruction of his typewriter was in retaliation for reporting Julie Bridgewater's "friend," Joell Morrill for sexual harassment. (*Id.*) He also states

11

in the body of his grievance that he "hope[s] this matter is not ATTEMPTED to be swept under the rug like my sexual harassment and assault was at the hands of the staff at JCS." (*Id.*)

Grievance JCF-12-03-0589-19c dealt with stolen headphones. (*Id.* at 30.) In the body of the Grievance Plaintiff said that the headphones might have been stolen in retaliation for complaining against Ms. Morrill. (*Id.*)

Grievances JCF-12-06-1380-17c and JCS-12-06-0569-19z also dealt with stolen property. (*Id.* at 16, 22.) In the section that asks "[w]hat attempt did you make to resolve this issue prior to writing this grievance," Plaintiff answered with the following:

> This grievance is against the Michigan Department of Corrections; Kelly Sigler; . . . JCS Inspector Clifton; . . . Grievant can not present all names specifically because of an inability to access files and the aforementioned parties attempts at covering matters up. Grievant tried [to] resolve matters herein by sending written correspondence to Central office/Director's Office on 5-15-12, with no resolution. This is all information 'available' to grievant.

*Id.* In the "[s]tate problem clearly" section, Plaintiff stated the following:

> On 5-15-12, grievant tried to resolve an issue of departmental staff, collectively, withholding grievant's property, consisting of letters, photos and phone conversations, from Joell Morrill to/with grievant. Various departmental staff, including JCS Inspector Clifton, . . . has withheld personal property because of a supposed investigation into a sexual assault that occurred on grievant by psychologist Morrill. Grievant was once again ignored in trying to uncover specific facts to meet 42 USC 1997e(a) mandates. Grievant was sexually assaulted repeatedly by Morrill[] over the course of over a year (2009-10), specific dates and times are not available because MDOC staff refuse to release not only grievant's personal property, e.g., personal logs, letters, pictures, cards, etc., but their investigative findings. Morrill[] tried to have grievant stabbed after her sexual assaults became the spotlight of investigation. Without the completed investigative reports from all parties grievant cannot meet grievance mandates. It is grievant's contention that, not limited to the aforementioned parties, MDOC staff are attempting to cover these matters up and not return or disclose specifics. Grievant was transferred from JCS because the MDOC's investigation into Morrill's sexual assaults, and later returned to JCS where grievant was again sexually assaulted by Morrill. MDOC personnel knew of these actions and continued to let such

> transpire and refuse to provide grievant with not only material relevant to proof, but any reports generated by parties to support these repeated sexual assaults transpired. Grievant pleads for specific dates, times, memos, reports. Resolution: Department staff provide grievant with enough information to meet 03.02.130.

(*Id.* at 21.)

The last two grievances, IBC-13-03-0616-27a and JCF-12-09-2075-28e, were completely unrelated to the alleged sexual assault. (*Id.* at 6, 12.) Respectively, they dealt with an alleged retaliation against Plaintiff for exercising his First Amendment rights and removal of his assignment at the "chowhall" in violation of his due process rights. (*Id.*)

Plaintiff reported the alleged sexual assault to David Clifton, who reported it to Internal Affairs. *See* (Doc. 11-2 at 1.) There was a subsequent Internal Affairs investigation that ended when the alleged assailant left the facility.[4] (Doc. 11-5 at 23.)

### iii. Exhaustion of Remedies Analysis

*Woodford* and *Jones* require inmates to file grievances that conform to MDOC procedures in order to properly exhaust available remedies. 548 U.S. at 93; 549 U.S. at 218. The first question, then, is whether the MDOC's policy requires an inmate to identify the 'issue being grieved' in his or her grievance. If it does, properly identifying the 'issue being grieved' is a part of the MDOC's procedure which must be followed in order to properly exhaust available remedies.

The MDOC grievance policy provides: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved

---

[4] This might be in contravention of MDOC PD for Prohibited Sexual Conduct Involving Prisoners, which states in paragraph R that "[t]he investigation shall not be closed simply due to the resignation, transfer, or termination of the accused staff person." MDOC PD 03.03.140.

13

(i.e., who, what, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." MDOC PD 03.02.130(R).

I suggest that the MDOC's policy requires that the grievant properly *identify* the 'issue being grieved' as the same issue that is subsequently complained about in federal court. Since the policy requires that all the information the grievant provides be "facts" that are relevant to the "issue being grieved" it follows that the grievant must first *identify* the 'issue being grieved.' This reading of the MDOC is not only reasonable, but is also bolstered by instructions to "[u]se a separate grievance form for each issue." (Doc. 11-5 at 21.)

The next question is whether Plaintiff identified the 'issue being grieved' in his grievances filed with MDOC as the same issue that he raises in his current complaint. In all of his grievances, Plaintiff identifies within the first few sentences what the 'issue being grieved' is and it is always something other than failure to prevent sexual assault/harassment. In Grievance JCS-11-11-2011-19c, Plaintiff identified the 'issue being grieved' as a violation of the policy that required personnel to transfer his typewriter when he was transferred. In Grievance JCF-12-03-0589-19c Plaintiff did not identify the 'issue being grieved' as failure to prevent sexual harassment/assault, but rather as headphones that were not returned to the Plaintiff. Plaintiff only mentions the sexual harassment complaint to suggest that the headphones may have been destroyed in retaliation. (Doc. 11-5 at 24.) Likewise, in Grievances JCF-12-06-1380-17c and JCS-12-06-0569-19z he identified the issue as wrongful withholding of property, not as failure to report sexual harassment/assault. While Plaintiff mentioned the fact that sexual harassment occurred, he mentioned it only to explain why he believed his property was being withheld or destroyed.

Because none of the grievances filed by the Plaintiff have as the 'issue being grieved' failure to prevent sexual harassment/assault, and because MDOC policy requires proper identification of the 'issue being grieved,' Plaintiff did not properly exhaust his administrative remedies as required by *Woodford*. *See Ward v. Luckey*, No. 12-CV-14875, 2013 WL 5595350, at *2 (E.D. Mich. Oct. 11, 2013) (holding that grievance was insufficient to exhaust with respect to claims asserted in the complaint where grievance complained that defendant called plaintiff into the library during his yard time and complaint alleged first amendment violation based on his right to access the library in retaliation for past grievances).

I therefore suggest that Defendant Sigler's motion for summary judgment should be granted because the Plaintiff has failed to properly exhaust his administrative remedies.

### D.    Plaintiff's Motion to Defer Defendant Sigler's Motion for Summary Judgment

Plaintiff seeks to defer summary judgment (Doc. 29) because he "needs to obtain discovery and obtain the contractual agreement between Defendant Sigler's employer (MTW) and the Michigan Department of Corrections (MDOC)." (Doc. 29 at 3.) I will construe this motion as one under Rule 56(d). Under Rule 56(d), if the nonmovant shows by affidavit or declaration that he cannot present facts essential to justify his opposition to a motion for summary judgment, the court may, among other options, defer considering the motion or deny the motion for summary judgment. In the instant case, Defendant Sigler has indicated that there is no contract between MTW and MDOC. Even if there were, however, it would not affect my analysis under the relevant state actor portion of this Report and Recommendation. I therefore recommend denying the motion because any further discovery on the issue would be futile. *See*, *Burlington Northern Santa Fe & Co. v. Assiniboine and Sioux Tribes*, 323 F.3d 767, 774

(9th Cir. 2003) (noting that courts need not grant a motion under 56(d) if discovery would be futile).

I therefore recommend that Plaintiff's motion be denied.

### E. Conclusion

For all the reasons stated above, I suggest that Defendant Sigler's Motion for Summary Judgment be **GRANTED** and that Plaintiff's motion to defer Defendant Sigler's motion for summary judgment be **DENIED**.

### III. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it

pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 5, 2014           /S PATRICIA T. MORRIS
                               Patricia T. Morris
                               United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date using the Court's CM/ECF system which delivers a copy to all counsel of record. A hard copy was served by first class mail on Jeffrey Gronski, #294193, Bellamy Creek Correctional Facility, 1727 W. Bluewater Highway, Ionia, MI, 48846.

Date: August 5, 2014           By     s/Jean L. Broucek
                               Case Manager to Magistrate Judge Morris